**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| JESSICA R. SHIMKUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:11-CV-122-TLS |
| | ) | |
| O'CHARLEY'S, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Jessica R. Shimkus filed a Complaint against Defendant O'Charley's, Inc., alleging sexual harassment, discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*, and intentional infliction of emotional distress under Indiana law. The Defendant has moved to compel arbitration of the Plaintiff's claims and dismiss the Plaintiff's Complaint, or in the alternative to stay, pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, and Rule 12 of the Federal Rules of Civil Procedure [Def.'s Mot. to Dismiss, or in the Alternative to Stay, and to Compel Arbitration, ECF No. 14; Mem. in Supp. of Mot., ECF No. 15]. The Defendant included the Affidavits of Armando Lopez and Christine Schaefer as evidentiary support for its requested relief, and the Court converted the Motion to a Motion for Summary Judgment [Order, ECF No. 16]. The Plaintiff has not filed a response.

**STANDARD OF REVIEW**

A court must grant summary judgment when the admissible evidence, construed in favor of the non-movant, reveals no genuine issue as to any material facts and establishes that the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010). If there is sufficient evidence for a jury to return a verdict for the non-moving party, a genuine issue of material fact exists. *See Swearnigen-El*, 602 F.3d at 859. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

Under the FAA, "[a] district court must promptly compel arbitration once is it satisfied that the parties agreed to arbitrate." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (citing 9 U.S.C. § 4). "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Tinder*, 305 F.3d at 735.

## STATEMENT OF FACTS

The Defendant has designated and cited to evidence in the record to support its recitation of the pertinent facts. (Mem. in Support 2–6, ECF No. 15.) Because the Plaintiff has not filed a response, the Court is entitled to consider these facts undisputed for purposes of the Motion for Summary Judgment, and must grant summary judgment and compel arbitration if the Motion and supporting materials show that the Defendant is entitled to it. *See* Fed. R. Civ. P. 56(e)(2) & (3); *Tinder*, 305 F.3d at 735. The Court relies on the following undisputed facts to resolve the Defendant's Motion:

On August 19, 2006, the Plaintiff submitted an online application for employment with the Defendant. As part of the application process, a "Terms and Condition" screen informed her that the Defendant offered Alternative Dispute Resolution (ADR) to resolve workplace issues and disputes, which involved three steps described by the Defendant as Open Door, Mediation, and Arbitration. The following information was provided and the Plaintiff was prompted, and required, to click "I Agree" before submitting her online application:

> In consideration of O'Charley's further processing my application for employment, I agree that if I am hired, I will sign, electronically or otherwise, an O'Charley's ADR agreement which generally includes my agreement: (1) to submit claims to mediation or arbitration in accordance with O'Charley's Rules for the Resolution of Employment Disputes (2) to waive my rights to a private lawsuit and have that lawsuit heard by a judge or jury as to any claims that I may have now or in the future against O'Charley's or any of its subsidiaries; and (3) that any resolution of such a claim will be final and binding on me and O'Charley's. I further agree and understand that in order to obtain employment with O'Charley's, I must sign the ADR agreement upon hire.

(Schaefer Aff., ¶ 4 and Tab 2, ECF No. 15-2.)

When the Defendant hires new employees, they are required to complete a new-hire training and orientation. The program includes electronic review of various employment-related documents, including an Arbitration Agreement. The Plaintiff participated in this new-hire orientation and, as a condition of her employment, agreed to be bound by the terms of the Arbitration Agreement. The Plaintiff was given an opportunity to read the Arbitration Agreement and to click "I Agree" in express consent to the terms of the Arbitration Agreement. If the Plaintiff did not select "I Agree" she could not continue with the orientation program and would have instead exited the program. The Plaintiff clicked "I Agree" and the orientation program captured her electronic signature as "JS08212006." (Lopez Aff., ¶ 4 and Tab 2, ECF No. 15-1.) The JS represents the Plaintiff's initials for her first and last names, and the numbers

3

represent the date of August 21, 2006, the date she participated in the orientation. The opening paragraph of the Arbitration Agreement provides:

> In consideration of O'Charley's providing you ("Employee") with an application for employment, or an offer of employment or further employment by O'Charley's, and the compensation and job benefits that Employee has and/or will receive from O'Charley's, the benefits of the speedy, impartial, and cost effective dispute resolution procedure described below, and the mutual promises made by Employee and O'Charley's herein, the undersigned Employee hereby agrees to the following:

(Schaefer Aff. ¶¶ 5–6 and Tabs 3,4; Lopez Aff. ¶ 4 and Tab 1). The first paragraph of the Arbitration Agreement states:

> Employee and O'Charley's mutually agree that any and all claims or disputes described in paragraph 2 that Employee may have now or in the future with or against O'Charley's, any parent or subsidiary of, or company affiliated with, O'Charley's Inc. or any of its subsidiaries, and their officers, directors, managers, employees, or agents acting in their capacity as such or otherwise . . . shall be submitted to arbitration and heard and decided by a neutral arbitrator from the AAA's roster of employment dispute arbitrators in accordance with O'Charley's Rules for the Resolution of Employment Disputes, which are incorporated herein by reference.

(*Id.*) The second paragraph identifies the claims or dispute that are subject to arbitration. These include, "all claims or controversies, whether or not arising out of employment or termination of employment, that would constitute a cause of action in court, including but not limited to . . . tort claims; claims for discrimination or other employment-related claims; [and] . . . claims for violation of any federal . . . statute." (*Id.*) The paragraph specifically cites to Title VII of the Civil Rights Act of 1964. A later provision states that the Agreement it is governed by the FAA.

The Defendant's ADR policy is also set forth in its Hourly Policies & Procedures Handbook. It informs employees that, as a condition of employment, they were required to sign an Arbitration Agreement, that by signing they agreed to resolve complaints through open door

4

policy or otherwise, and that mediation and arbitration were the alternative to in-court resolution of any disputes. The Plaintiff's electronic signature acknowledging receipt of the Handbook was captured on August 21, 2006. Also during orientation, the Plaintiff initialed the cover of her employee file jacket next to the following sentence: "If my concern or issue cannot be resolved through open door policy, I agree to resolve my issue through mediation and/or arbitration." (Lopez Aff. ¶ 5 and Tab 3.)

## DISCUSSION

The determination of whether parties are contractually bound to arbitrate and what issues they are bound to arbitrate are matters to be determined by the court. *Granite Rock Co. v. Int'l Broth. of Teamsters*, 130 S. Ct. 2847, 2855 (2010); *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 651 (1986) (stating that "[i]t is the court's duty to interpret [an] agreement and to determine whether the parties intended to arbitrate"); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005). The FAA applies to employment agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Although the FAA "'favors resolution of disputes through arbitration, its provisions are not to be construed so broadly as to include claims that were never intended for arbitration.'" *Cont'l Cas. Co.*, 417 F.3d at 730 (quoting *Am. United Logistics, Inc. v. Catellus Dev. Corp.,* 319 F.3d 921, 929 (7th Cir. 2003)). The parties must have agreed in advance to submit the disputes to arbitration because the arbitration agreement is the source of the arbitrator's authority to resolve those disputes, and a party may not be forced to arbitrate any dispute that the party did not agree to arbitrate. *AT&T Techs.*, 475 U.S. at 648–49. Courts must be mindful that the FAA "'is a congressional

declaration of a liberal federal policy favoring arbitration agreements' and 'that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Cont'l Cas. Co.*, 417 F.3d at 730–31 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983)).

The issue whether the parties have agreed to arbitrate is governed by state law principles governing contract formation. *Cont'l Cas. Co.*, 417 F.3d at 730 (citing *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)); *see also Reliance Ins. Co. v. Raybestos Prods. Co.,* 382 F.3d 676, 678–79 (7th Cir. 2004)). Indiana courts apply ordinary contract principles to arbitration agreements. *Showboat Marina Casino P'ship v. Tonn & Blank Const.*, 790 N.E.2d 595, 598 (Ind. Ct. App. 2003); *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001). Like other contracts, however, arbitration agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

Under the FAA, arbitration may be compelled if there was a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The undisputed facts show that the Plaintiff and the Defendant entered into a valid agreement to arbitrate employment disputes. *See Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 598 (Ind. 1995) (setting forth the traditional contract elements of an offer, acceptance, and consideration.) The Plaintiff accepted the Defendant's offer to arbitrate all disputes she had with the Defendant in consideration of her application and employment, by clicking "I Agree" when submitting her online application, by executing the Arbitration Agreement during the new-hire orientation process, by receiving the

6

Hourly Policies & Procedures Handbook, and by signing her employee file jacket. There is no evidence to suggest that fraud, duress, or unconscionability negate her knowing and voluntary agreement to submit her claims to arbitration and to, as the Arbitration Agreement stated, "waive [her] right[ ] to file a private lawsuit and have the suit heard in court by a judge or jury." (Schaefer Aff., Tab 3 at ¶ 3.) The claims raised in the Plaintiffs' Complaint—sexual harassment, discrimination, and retaliation in violation of Title VII and intentional infliction of emotional distress under Indiana law—fall within the scope of the Arbitration agreement. Because the Plaintiff and the Defendant contracted for the ADR process set forth in the Arbitration Agreement to be the sole avenue of redress for the Plaintiff's employment discrimination claims, her claims cannot proceed in this Court but must be resolved through arbitration.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment [ECF No. 14] is GRANTED. Because all of the issues raised in the Complaint must be submitted to arbitration, the Complaint is DISMISSED WITHOUT PREJUDICE and the Plaintiff is ORDERED to SUBMIT TO ARBITRATION in accordance with the Arbitration Agreement.

SO ORDERED on August 16, 2011.

                                            s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT